IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TARA GRIM
*Plaintiff*,

v.

BALTIMORE POLICE
DEPARTMENT *et al.*,
*Defendants*.

Civil Action No. ELH-18-3864

**MEMORANDUM**

This civil rights case stems from a traffic stop that occurred in the early evening of January 1, 2016. Plaintiff Tara Grim has sued the Baltimore City Police Department ("BPD"); BPD Officer Marcos Paul, who conducted the traffic stop; former BPD Commissioner Kevin Davis; "Unknown Supervisors" of the BPD; the Mayor and City Council of Baltimore (the "City"); and the State of Maryland (the "State). She alleges that, during the traffic stop, Officer Paul groped her breasts and exposed her vagina and buttocks, under the guise of a search, in violation of her rights under the Fourth and Fourteenth Amendments to the Constitution as well as the Maryland Declaration of Rights and common law. ECF 13 (the "Amended Complaint"). The individual defendants have been sued in their personal and official capacities. *Id*. ¶¶ 9, 10, 11.

The State moved to dismiss the Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). ECF 18. Thereafter, plaintiff filed a Notice of Voluntary Dismissal as to the State (ECF 26), which I approved by Order of April 2, 2019. ECF 27.

The City also moved to dismiss plaintiff's Amended Complaint under Fed. R. Civ. P. 12(b)(6). ECF 19. Similarly, the BPD and Davis moved to dismiss, pursuant to Rule 12(b)(6). ECF 20. Plaintiff opposed both motions in a consolidated opposition (ECF 25), and the City and

the BPD replied. ECF 28; ECF 29. In a Memorandum Opinion (ECF 37) and Order (ECF 38) of November 11, 2019, the Court granted the City's motion, thereby dismissing the City from the suit. ECF 37 at 58. As to the BPD, I dismissed plaintiff's failure-to-train claim, lodged under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978). ECF 37 at 30-33. However, I denied the motion as to plaintiff's *Monell* claim based on a condonation theory of liability. ECF 37 at 34-39. And, I stayed plaintiff's indemnification claim lodged against the BPD. *Id.* at 47-50.

The BPD answered the suit on November 25, 2019. ECF 39.[1] And, on December 12, 2019, the BPD filed a "Motion To Bifurcate And Stay Discovery" under Fed. R. Civ. P. 26(b) and 42(b). ECF 42. The motion is supported by a memorandum of law. ECF 42-1 (collectively, the "Motion" or the "Motion to Bifurcate"). Plaintiff opposes the Motion (ECF 49-1), to which the BPD has replied. ECF 50.

No hearing is necessary to resolve the Motion. *See* Local Rule 105(6). For the reasons that follow, I shall grant the Motion to Bifurcate. ECF 42. Therefore, I will stay discovery as to the claims against the BPD, pending disposition of the claims against Officer Paul.

## I. Factual Background

On January 1, 2016, at approximately 7:00 p.m., BPD Officer Marcos Paul effectuated a traffic stop of Grim while she was driving on Greenspring Avenue in Baltimore, Maryland. ECF 13, ¶ 15. After Officer Paul checked Grim's license and registration, he asked Grim questions

---

[1] In the BPD's Answer, it explained that Former PBD Commissioner Davis did not answer the suit because there are no active claims against him as a result of the Court's Memorandum Opinion and Order of November 11, 2019. ECF 39 at 1 n.1. The BPD is correct. The Amended Complaint lodges three counts against Davis: a *Monell* claim (Count I); a § 1983 supervisory liability claim (Count II); and a State law pattern-and-practice claim (Count IV). ECF 13 at 10, 11-12, 13-14. Because I dismissed Count I as to Davis and dismissed Counts II and IV in their entirety, ECF 37 at 58, Davis shall be dismissed from the suit.

unrelated to the stop, including why she had a child's car seat in her backseat and where she worked. *Id.* ¶¶ 16, 17. Officer Paul told Grim that she needed to follow his patrol car to a separate location, so that he could conduct a search of her vehicle. *Id.* ¶ 18. When Grim questioned this procedure, Officer Paul responded that she could either obey his command or be arrested. *Id*.

"[T]errified," Grim followed Officer Paul's patrol car. *Id.* ¶ 19. While driving, she tried to call a friend on her cell phone. *Id.* However, Officer Paul stopped abruptly and screamed out of his window that Grim "better not be on [her] fucking phone." *Id.* ¶ 20. Grim was unable to reach her friend. *Id.* ¶ 19.

Grim followed Officer Paul to a "secluded area." *Id.* ¶ 21. There, Officer Paul searched Grim's vehicle and Grim's person. According to plaintiff, Officer Paul "unzipped her jacket and groped her breasts." *Id.* ¶ 22. Officer Paul then "pulled the front area of Ms. Grim's leggings, exposing her genitalia," and "shined a flashlight down Ms. Grim's leggings and viewed her genitalia in the guise of a 'search.'" *Id.* ¶ 23. Similarly, Officer Paul proceeded to "pull[] the rear area of Ms. Grim's leggings," exposing her buttocks. *Id.* ¶ 24. Again, he shined the flashlight down her leggings. *Id.*

Plaintiff, who was pregnant at the time, was "convinced that the officer was going to rape her." *Id.* She was both "frightened and humiliated." *Id*.

When another vehicle approached, Officer Paul ceased his action. *Id.* ¶ 25. Although Officer Paul told Grim that she could leave, he also said he would follow her home. *Id.* Officer Paul did not issue a citation or a ticket to Grim. *Id.* ¶ 26.

Plaintiff drove to her residence on Greenspring Avenue, where she was living with her uncle. *Id.* ¶ 26. Officer Paul followed Grim, and said "words to the effect of, 'so this is where you live'" and "words to the effect of, 'I'll be contacting you for counseling.'" *Id.* ¶ 28.

Grim entered her home and told her sister and uncle what had just happened. *Id.* ¶ 30. Her sister called 911. *Id.* ¶ 31. Officer Paul initially responded to the 911 call, but he soon left the scene. *Id.* ¶ 32. Shortly thereafter, a BPD detective arrived and interviewed Grim about the stop. *Id.* ¶ 33. Grim provided a recorded statement to the BPD on January 5, 2016. *Id.* ¶ 34.

Scared for her safety, Grim moved out of her home and into another residence, and sold her car. *Id.* ¶ 35. In addition, plaintiff alleges that she "was unable to perform her day-to-day functions and lost her job." *Id.* ¶ 36.

Plaintiff contends that the "unconstitutional strip search was not an isolated event." *Id.* ¶ 43. Rather, she alleges that "it was undertaken pursuant to, and caused by, BPD's policy and practice of providing deficient oversight and accountability, failure to train, supervise and discipline its officers, failing to reliably record when officers conduct a frisk, failing to ensure that officers comply with its strip search policy, failing to separately categorize or track complaints alleging unlawful strip searches and internal affairs officials failing to adequately investigate complaints that officers violate its strip search policy." *Id.* To support these allegations, plaintiff relies on an investigative report issued by the Department of Justice ("DOJ") on August 10, 2016, regarding BPD policies and procedures (the "DOJ Report"). *Id.* ¶¶ 37-41.

## II. Discussion

### A.

The BPD seeks to bifurcate the claims against Officer Paul and the BPD, pursuant to Fed. R. Civ. P. 42(b). ECF 42-1 at 2. Further, defendant urges the Court to stay discovery against the BPD, pending resolution of the § 1983 claims against Officer Paul. *Id.*

Rule 42(b) provides: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims,

4

counterclaims, or third-party claims." Notably, Rule 42(b) is disjunctive, meaning "[o]nly one of these criteria need be met to justify bifurcation." *Saxion v. Titan-C-Mfg.*, 86 F.3d, 553 556 (6th Cir. 1996) (citations omitted).

District courts have "broad discretion in deciding whether to bifurcate claims for trial, and the exercise of that discretion will be set aside only if clearly abused." *Dodson v. Prince George's Cty.*, GJH-13-2916, 2014 WL 4799032, at 1 (D. Md. Sept. 25, 2014) (citing *Dixon v. CSX Transp., Inc.*, 990 F.2d 1440, 1443 (4th Cir. 1993), *cert. denied*, 510 U.S. 915 (1993)); *see also Shetterly v. Raymark Indus., Inc.*, 117 F.3d 776, 782 (4th Cir. 1997); *Brown v. Bailey*, RDB-11-1901, 2012 WL 2188338, at *4 (D. Md. June 13, 2012); *Beasley v. Kelly*, DKC-10- 0049, 2010 WL 3221848, at *3 (D. Md. Aug. 13, 2010); *Dawson v. Prince George's Cty.*, 896 F. Supp. 537, 539 (D. Md. 1995); 9A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2388 (3d ed. 2019) ("It is well-established by a wealth of case law that ultimately the question of whether to conduct separate trials under Rule 42(b) should be, and is, a matter left to the sound discretion of the trial court[.]").

**B.**

Resolution of the bifurcation motion requires a brief review of 42 U.S.C. § 1983, on which some of plaintiff's claims are based. Section 1983 provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *see, e.g.*, *Filarsky v. Delia*, 566 U.S. 377, 383 (2012). However, § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights

elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

"To state a claim under Section 1983, a plaintiff must show that the alleged constitutional deprivation at issue occurred because of action taken by the defendant 'under color of . . . state law.'" *Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019) (quoting *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also Filarsky*, 566 U.S. at 383; *Wahi v. Charleston Area Medical Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009). The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical." *Philips*, 572 F.3d at 180.

In *Monell*, 436 U.S. at 690-91, the Supreme Court explained that local government entities are subject to suit under § 1983 based on the unconstitutional actions of individual defendants where those defendants were executing an official policy or custom of the local government that violated the plaintiff's rights.[2] As the *Monell* Court said, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury the government as an entity is responsible under § 1983." *Id*. at 694; *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Therefore, "Section 1983 plaintiffs seeking to impose liability on a municipality must . . . adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994); *see Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403

---

[2] As explained in the Memorandum Opinion of November 8, 2019, the BPD is a local government entity and therefore is subject to plaintiff's *Monell* claim. *See* ECF 37 at 23-27.

(1997); *Kirby v. Elizabeth City*, 388 F.3d 440, 451 (4th Cir. 2004), *cert. denied*, 547 U.S. 1187 (2006); *Young v. City of Mount Ranier*, 238 F.3d 567, 579 (4th Cir. 2001).

It is axiomatic that a *Monell* claim cannot lie "where there is no underlying constitutional violation by the employee." *Young*, 238 F.3d at 579; *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1996) (per curiam) ("[N]either *Monell* . . . nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when the jury has concluded that the officer inflicted no constitutional harm."); *Anderson v. Caldwell Cty. Sherriff's Office*, 524 F. App'x 854, 862 (4th Cir. 2013) ("No actionable claim against supervisors or local governments can exist without a constitutional violation committed by an employee."); *Burgess v. Balt. Police Dep't*, RDB-15-0834, 2016 WL 1159200, at *1 (D. Md. Mar. 23, 2016); *Williamson v. Prince George's Cty.*, DKC-10-1100, 2011 WL 1065780, at *2 (D. Md. Mar. 21, 2011).³

Moreover, *Monell* liability attaches "only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original); *accord Holloman v. Markowski*, 661 F. App'x 797, 799 (4th Cir. 2016) (per curiam), *cert. denied*, 137 S. Ct. 1342 (2017). In other words, there is no vicarious liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's

---

³ To be sure, "*Monell* . . . and its progeny do not require that a jury must first find an individual defendant *liable* before imposing liability on [a] local government." *Anderson v. City of Atlanta*, 778 F.2d 678, 686 (11th Cir. 1985) (emphasis added). Thus, although an individual defendant may be entitled to qualified immunity, the local government entity can be liable under § 1983. *See Int'l Ground Transp., Inc. v. Mayor & City Council of* Ocean, 475 F.3d 214, 219 (4th Cir. 2007) (observing that "a finding of no liability on the part of the individual municipal actors can co-exist with a finding of liability on the part of the municipality"). However, in such a scenario, the plaintiff still must establish that the individual defendant committed constitutional violations in order for the entity defendant to be held liable under § 1983.

own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane*, 355 F.3d at 782. Therefore, "a city or other local governmental entity cannot be subject to liability at all unless the harm was caused in the implementation of 'official municipal policy.'" *Lozman v. City of Riviera Beach*, ___ U.S. ___, 138 S. Ct. 1945, 1951 (2018) (quoting *Monell*, 436 U.S. at 691).

As a result, in most cases, a plaintiff's § 1983 claims against a municipality "hinge on his ability to show that [individual defendants] violated his constitutional rights." *Dawson*, 896 F. Supp. at 540; *see also Young*, 238 F.3d at 579; *Temkin v. Frederick Cty. Comm'rs*, 945 F.2d 716, 724 (4th Cir. 1991) ("A claim of inadequate training under section 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised."), *cert. denied*, 502 U.S. 1095 (1992); *Burgess*, 2016 WL 1159200, at *1; *Williamson*, 2011 WL 1065780, at *2; *Marryshow v. Town of Bladensburg*, 139 F.R.D. 318, 319 (D. Md. 1991) ("Under Section 1983, to hold the [supervisor and municipal] Defendants liable, Plaintiff must first establish that at least one [individual] Defendant violated his constitutional rights.").

In sum, a viable § 1983 *Monell* claim consists of two components: (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights. *See, e.g.*, *Brown*, 520 U.S. at 403; *Kirby*, 388 F.3d at 451; *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

Cases that contain *Monell* claims "are good candidates for bifurcation." *Beasley*, 2010 WL 3221848, at *3. Bifurcation can advance the efficient and convenient resolution of the case because where there is no "initial finding that a government employee violated a plaintiff's constitutional rights, . . . . no subsequent trial of the municipality is necessary." *Id.* In addition, bifurcation might spare the parties from expending valuable resources in discovery, because

resolution of the claims as to the individual defendants may obviate the need to litigate the *Monell* claim. *See Burgess*, 2016 WL 1159200, at *1 (finding bifurcation appropriate "[g]iven the derivative nature of [the police department's] potential liability"); *Taylor v. Maryland*, DKC-10-2167, 2010 WL 5247903, at *2 (D. Md. Dec. 16, 2010) (reasoning that due to the "secondary nature of a municipality on potential liability under § 1983," courts "have frequently bifurcated discovery and or trial so that cases proceed first with a trial against the individual defendant(s) alleged to be primarily liable") (alteration in original).

Equally important, bifurcation prevents the potential prejudice to individual defendants that may result from the introduction of inflammatory evidence concerning the municipality's policies, practices, or customs. *Taylor*, 2010 WL 5247903, at *2; *Beasley*, 2010 WL 3221848, at *3. This is especially true in excessive force cases, where the *Monell* evidence would include "prior incidents of police brutality and policymakers' reactions to such incidents." *Beasley*, 2010 WL 3221848, at *3. Although such evidence "is relevant under the *Monell* analysis," it might unfairly bias the jury as to the liability of the individual defendants. *See id.* (observing that the introduction of instances of police misconduct at trial "would be highly prejudicial to the individual government employees").

Courts in this district have consistently ruled that in cases such as this one bifurcation "is appropriate and often desirable." *Brown*, 2012 WL 2188338, at *4; *see also, e.g.*, *McCullough v. Anne Arundel Cty.*, CCB-19-926, 2020 WL 836235, at *7 n. 15 (D. Md. Feb. 20, 2020); *Peprah v. Williams*, GLR-18-990, 2019 WL 224245, at *10 (D. Md. Jan. 15, 2019); *accord Peterson v. Prince George's Cty*, PWG-16-1947, 2017 WL 2666109 at *4 (D. Md. June 21, 2017); *Humbert v. O'Malley*, WDQ-11-0440, 2012 WL 1066478, at *2 (D. Md. Mar. 27, 2012), *rev'd on other grounds*, 866 F.3d 546 (4th Cir. 2017); *James v. Frederick Cty. Pub. Schs.*, 441 F. Supp. 2d 755,

762 (D. Md. 2006); *Robertson v. Prince George's Cty.,* 215 F. Supp. 2d 664, 665 (D. Md. 2002); *Dawson*, 896 F. Supp. at 539; *Marryshow*, 139 F.R.D. at 319.

## C.

The BPD argues that bifurcation of plaintiff's *Monell* claim is "highly desirable" because it promotes judicial economy. ECF 42-1 at 4; *see id.* at 5. Further, defendant contends that bifurcation is "essential" to prevent juror confusion and prejudice either to the BPD or Officer Paul. *Id.* at 6. Ms. Grim counters that bifurcation will cause her undue prejudice by "thwart[ing]" her ability to fully investigate her claim against Def. Paul." ECF 49-1 at 4. Specifically, she contends that bifurcation will deprive her of evidence necessary to establish that Officer Paul acted under color of state law when he violated her rights. *Id.* at 5.

In my view, bifurcation is appropriate in this case because it will prevent prejudice to Officer Paul and because it best serves judicial economy.

In *Monell*, 436 U.S. 658, the Supreme Court determined that local governmental bodies are liable under § 1983 only if the plaintiff's constitutional rights were violated by government employees who were executing an official policy or custom of the local government. *Id.* at 690-91; *see also Love-Lane*, 355 F.3d at 782. Therefore, "[s]ection 1983 plaintiffs seeking to impose liability on a municipality must . . . adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan*, 15 F.3d at 338.

To "adequately plead" such a claim against the BPD in this case, it is highly likely that plaintiff will rely on evidence of other unconstitutional strip searches. Indeed, this is already apparent from plaintiff's Amended Complaint. *See* ECF 13, ¶¶ 37-41. As discussed, evidence of the BPD's "custom, practice or policy may include evidence of 'prior incidents of police brutality,

the nature of such incidents, and the municipal policy-makers' reaction to them.'" *Beasley*, 2010 WL 3221848, at *3 (citations omitted). But, this evidence is not relevant to plaintiff's suit against Officer Paul. *See id.*; *see also Humbert*, 2012 WL 1066478, at *2 (noting that a plaintiff's submission of "evidence of prior misconduct by police officers" to demonstrate "deliberate indifference, or a custom or policy of constitutional violations . . . . would unduly prejudice" the individual defendants); *Beasley*, 2010 WL 3221848, at *3 (finding that such evidence against a municipality "would be highly prejudicial to the individual government employees"). Thus, bifurcation will prevent unfair prejudice to Officer Paul that would result if other instances of police misconduct were introduced in a joint trial involving the BPD and Officer Paul.

Moreover, bifurcation will promote judicial economy. *See* Fed. R. Civ. P. 42(b). Determining whether Officer Paul violated Ms. Grim's constitutional rights is a prerequisite to establishing liability against the BPD. *See Young*, 238 F.3d at 579; *Peprah*, 2019 WL 224245, at *10; *Burgess*, 2016 WL 1159200, at *1; *Williamson*, 2011 WL 1065780, at *2; *Marryshow*, 139 F.R.D. at 319. Failure to bifurcate the *Monell* claim would prolong the trial, because plaintiff would necessarily have to present evidence pertinent to the *Monell* claim, while also producing evidence as to Officer Paul. Bifurcation "preserves scarce judicial and party resources by avoiding expenses related to [plaintiff's] *Monell* claims until [she] has established the existence of an underlying constitutional violation." *Peprah*, 2019 WL 224245, at *10.

In other words, bifurcation will facilitate an expeditious trial as to Officer Paul by avoiding the delay inherent in the discovery process and trial that would be required in regard to the contemporaneous pursuit of the *Monell* Claim. This could lead to a reduction of costs, without any real prejudice to plaintiff. *See Taylor*, 2010 WL 5247903, at *2 ("Streamlining the issues and

limiting discovery . . . will curb rather than increase costs[.]").

Nonetheless, plaintiff insists that bifurcating her *Monell* claim will result in unfair prejudice by precluding her from obtaining discovery from the BPD concerning Officer Paul. ECF 49-1 at 5. This argument is without merit. As the BPD points out, bifurcation will stay discovery related to plaintiff's *Monell* claim, *i.e.*, evidence of the BPD's policies, practices or customs. It will not, however, effect plaintiff's ability to pursue discovery concerning her claims against Officer Paul. *See* ECF 50 at 4. Bifurcation therefore erects no barrier to plaintiff's ability to obtain documents pertaining to Officer Paul from the BPD to the extent that the BPD is the custodian of such records.

### III. Conclusion

In my view, bifurcation is appropriate because it will promote judicial economy, conserve the parties' resources, prevent prejudice to the Officer Paul, and will not prejudice plaintiff. Bifurcation "streamline[s] the issues for trial [and] it prevents prejudice to the individual defendant that would otherwise arise from the introduction of evidence of prior incidents of police brutality in order to make a case against the municipality." *Taylor*, 2010 WL 5247903, at *2.

Therefore, I shall grant the Motion to Bifurcate (ECF 42) as to Count I. And, discovery pertaining to Count I shall be stayed, pending resolution of plaintiff's claims against Officer Paul.

An Order follows.


Date: March 5, 2020 _____/s/_____
Ellen L. Hollander
United States District Judge